STATE OF NEBRASKA, APPELLEE, V. ROGER COOLEY,
APPELLANT.

348 N.W.2d 433

Filed April 20, 1984. No. 83-689.

Kirk E. Naylor, Jr., for appellant.

Paul L. Douglas, Attorney General, and Marilyn
B. Hutchinson, for appellee.

KRIVOSHA, C.J., and CAPORALE, J., and MCCOWN
and BRODKEY, JJ., Retired, and RONIN, D.J., Retired.

CAPORALE, J.

The defendant-appellant, Roger Cooley, entered a
plea of guilty to a charge of attempted subornation
of perjury and was sentenced to a term of imprison-
ment of 1 year. We affirm the judgment of the dis-
trict court.

In his sole assignment of error Cooley claims that
the district court abused its discretion by imposing
the 1-year sentence. While we are given the statu-
tory authority to modify sentences which are exces-
sive, Neb. Rev. Stat. § 29-2308 (Cum. Supp. 1982), a
judgment denying probation and imposing a sen-
tence which is within statutory limits will not be
modified absent an abuse of discretion by the sen-
tencing judge. State v. Miner, 216 Neb. 309, 343
N.W.2d 899 (1984); State v. Nix, 215 Neb. 410, 338
N.W.2d 782 (1983). Attempted subornation of per-
jury is a Class IV felony. Neb. Rev. Stat. §§ 28-915
and 28-201(4)(c) (Reissue 1979). That classification
of crime is punishable by a maximum penalty of im-
prisonment for 5 years, a $10,000 fine, or both such
imprisonment and fine. There is no prescribed

minimum penalty. Neb. Rev. Stat. § 28-105(1) (Reissue 1979). The 1-year term of imprisonment being well within statutory limitations, the sole remaining question is whether the sentencing judge abused his discretion.

Cooley contends that there was an abuse of discretion rooted in the fact that while he was charged with a felony and sentenced to a year's imprisonment, his two companions were less harshly treated. In order to assess this claim it is necessary to review the factual situation which resulted in Cooley's conviction.

In the late afternoon of December 1, 1982, Cooley, Tim Kayl, and Tim Fehncke, all Columbus, Nebraska, police officers at the time, were off duty and sitting at Fehncke's house drinking beer and discussing ongoing narcotics investigations. The conversation turned to the efforts which had been made to obtain the cooperation of one Eddie Johansen in an investigation. Around 5:30 p.m., Kayl, armed with Cooley's handgun, left the Fehncke residence to find Johansen and talk with him. Unknown to Kayl, Cooley and Fehncke decided to "back up" Kayl. Fehncke armed himself, and then he and Cooley drove to the police station, where Cooley obtained another handgun. Unable to locate Kayl, they again went to Fehncke's residence, where Kayl had returned. Kayl then called Johansen's father, who informed him that Johansen was at a local school where he and other individuals were working. Kayl set off for the school, and, again unknown to Kayl, Cooley and Fehncke decided to back him up.

When Kayl reached the school, he saw two work partners of Johansen. Kayl approached the two, stepping into freshly poured cement in the process, and repeatedly asked, "Where is Eddie?" Kayl then moved away from the two. At that time Fehncke appeared, pointed his handgun at the two men, and ordered them against the wall. Fehncke grabbed one of the workmen and repeatedly slammed

his head against a windowsill. Kayl and Fehncke also searched the men. Meanwhile, Cooley noticed Johansen's arrival, and grabbed him and threw him against a fence. Cooley, claiming Johansen had made a furtive gesture, took his revolver, placed it against Johansen's head, and led him to a pickup truck. Cooley then threw Johansen onto the hood of the truck and kept the gun at Johansen's head. Cooley, Fehncke, and Kayl continued their harassment until other police officers arrived, at which time Cooley and Fehncke departed, leaving Kayl to speak with the newly arrived police officers.

Cooley, realizing that he and his friends had acted improperly, decided to fabricate a story to explain their actions. He drove to the police station and retrieved from his locker a bag of marijuana which had been seized in an unrelated incident. Cooley, Fehncke, and Kayl again met at Fehncke's house, where Cooley explained that they would make up the story that the marijuana had been seized from Johansen and his two companions. Cooley, Fehncke, and Kayl told this falsehood to their superiors. Kayl later changed his mind about continuing with the lie and informed his superiors of the true circumstances.

Although Kayl was apparently suspended for a period of time, he was retained on the Columbus police force. Both Cooley and Fehncke were fired. After Cooley pled guilty and was sentenced, Fehncke was charged with a false reporting misdemeanor and found guilty. His sentence is not part of the record before us in this case, but we were informed during oral argument that Fehncke was sentenced to 7 months in the county jail.

Cooley contends that his actions were not substantially different than those of Kayl or Fehncke and, thus, he is entitled to have their penalties considered by the sentencing judge. Cooley points out that while Fehncke will be able to serve his sentence in the county jail in his home community, near his

family, with a good opportunity for work release, he (Cooley) will have to serve his time in the harsher environment of a prison, away from his family, and with less opportunity for work release, thereby destroying his present desirable employment.

Cooley additionally claims that the court abused its discretion by not placing him on probation. Although the conduct of each of the three participants is base, vile, totally reprehensible, and criminal, there are distinctions to be made. It was Cooley who instigated the lie; it was he who took unlawful possession of contraband; it was he who conceived the plan to trump up charges against innocent men; and it was he who held a gun to Johansen's head.

There is probably no greater danger to the security of a society based upon the rule of law than for a police officer to willfully and maliciously violate the law and then attempt to frame innocent persons in order to escape the consequences of his own unlawful acts. Such conduct on the part of someone who seeks and accepts the responsibility and trust inherent in the role of a policeman threatens the very foundation of our social structure.

Neb. Rev. Stat. § 29-2260(2)(c) (Cum. Supp. 1982) provides that probation should not be granted if such a sentence will depreciate the seriousness of the offender's crime or promote disrespect for the law. Cooley disgraced the law in such a manner that a significant sanction must be imposed.

Without in any way commenting upon the adequacy of the sanctions imposed upon Cooley's companions, the nature and quality of Cooley's acts justify different treatment for him. We note that no fine was assessed against Cooley and that he received but 20 percent of the maximum prison sentence prescribed. Under the circumstances it cannot be said there was any abuse of discretion which worked to Cooley's prejudice.

AFFIRMED.